UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>   v.<br><br>RANDELL BURGE, TRAYVALE HARRISION, and PHILLIP SHIEL,<br><br>                      Defendants. | Case No. 2:18-cr-00144-JAD-GWF<br><br>**ORDER**<br><br>**Re: Motion to Sever (ECF No. 87)** |

This matter is before the Court on Defendant Randell Burge's Motion to Sever Trial or Alternatively to Bar Reference to Statements Made by Any Co-Defendants (ECF No. 82), filed on June 26, 2018. Defendants Phillip Shiel and Trayvale Harrison filed motions for joinder (ECF Nos. 84 and 87) which have been granted. The Government filed its Response (ECF No. 89) on July 10, 2018. The Court conducted a hearing in this matter on July 26, 2018.

## **BACKGROUND**

Defendants Burge, Harrison and Shiel are charged in Count One of the indictment with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C.§ 1951. *Indictment* (ECF No. 51). Defendants Harrison and Burge are charged in Count Two with interference with commerce by robbery in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2 for a robbery allegedly committed on June 5, 2017. Defendants Harrison, Burge and Shiel are charged in Counts Four, Six and Eight with interference with commerce by robbery in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2, for robberies that were allegedly committed on July 5, August 14, and August 25, 2017.

. . .

1

Defendant Burge states that the Defendants were arrested on September 8, 2017 and that they each gave a taped interview to law enforcement officers. Defendant Burge states that there is substantial reason to believe that "his defense will be antagonistic to the defense of his co-defendants and secondly, and most importantly, the government may attempt to use taped inculpatory statements taken from co-defendants that violates the Defendant's right to confront and cross-examine his accusers." *Motion* (ECF No. 82) at 2. Defendant has not provided the Court with copies of the Defendants' taped interviews or transcripts thereof. Nor has he specified in what manner the Defendants' defenses are antagonistic to each other. The Government states that it may call the officer(s) who interviewed a particular defendant to testify about his statement in a manner that does not implicate the codefendants.

**DISCUSSION**

Rule 8(b) of the Federal Rules of Criminal Procedure permits the joinder of defendants who have allegedly participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses. Codefendants jointly charged are, prima facie, to be jointly tried. *United States v. Mariscal,* 939 F.2d 884, 885 (9th Cir. 1991). This rule "should be construed broadly in favor of initial joinder." *United States v. Ford,* 632 F.2d 1354, 1373 (9th Cir.), *cert. denied,* 450 U.S. (1981). Joinder of charges against multiple defendants is particularly appropriate when the charges involve substantially overlapping evidence. *United States v. Vasquez–Velasco,* 15 F.3d 833, 844 (9th Cir. 1994). There is a strong preference for joint trials because separate trials would "impair both the efficiency and the fairness of the criminal justice system" by requiring the United States to "bring separate proceedings, presenting the same evidence again and again [.]" *Richardson v. Marsh,* 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). A joint trial is also particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials. *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).

Rule 14 provides relief from joinder if the defendant satisfies the "heavy burden" of showing that prejudice will result from joinder. *United States v. Sitton,* 968 F.2d 947, 961 (9th Cir. 1992). Because some prejudice results from any joinder, "if only 'some' prejudice is all that need be shown [for severance], few, if any, multiple defendant trials could be held." *United States v. Vaccaro,* 816 F.2d 443, 448 (9th Cir. 1987). "Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Severance should only be granted if there is a serious risk that a joint trial would either compromise a specific constitutional right of one of the defendants or prevent the jury from compartmentalizing the evidence as it relates to individual defendants. *See Id.* at 539; *see also United States v. Escalante,* 637 F.2d 1197, 1201–02 (9th Cir. 1980). Even where the risk of prejudice seems high, such risk can often be cured by "less drastic measures, such as limiting instructions[.]" *Zafiro,* 506 U.S. at 539.

The Ninth Circuit has developed a four-part test to aid the district court's determination of whether severance should be granted. These factors include: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendants can show with some particularity, a risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Hernandez–Orellana,* 539 F.3d 994, 1001 (9th Cir. 2008) (citing *United States v. Sullivan,* 522 F.3d 967, 981–82 (9th Cir. 2008)). The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury. *Sullivan,* 522 F.3d at 981–82.

**1. Whether Severance is Required Pursuant to *Bruton v. United States*.**

In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354 (2004), the Supreme Court held that a defendant's Sixth Amendment right to confront and cross examine the witnesses against

3

him precludes the admission of testimonial statements of a witness who does not appear at trial, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. While not spelling out a comprehensive definition of "testimonial," the Court stated that "it applies at minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 68, 124 S.Ct. at 1374. The Ninth Circuit, quoting *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), further states that "[a] statement is testimonial when it is 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *United States v. Rojas–Pedroza,* 716 F.3d 1253, 1267 (9th Cir. 2013). In this case, the Defendants assert that following their arrests, they were interviewed by law enforcement officers who recorded the interviews. It therefore appears that the defendants' statements are testimonial.

In *Bruton v. United States*, 391 U.S. 123, 137, 88 S.Ct. 1620 (1968), the Supreme Court held that the admission at trial of a non-testifying codefendant's confession which explicitly implicated the defendant violated his Sixth Amendment right to confront and cross-examine the witnesses against him. In so holding, the Court stated: "Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." 391 U.S. at 137, 88 S.Ct. at 1628.

In *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702 (1987), the Court stated that *Bruton* created only a "narrow exception" to the general rule that a witness whose testimony is introduced at a joint trial is not considered to be a witness against the defendant if the jury is instructed to consider that evidence only against another defendant. The general rule is predicated on the presumption that jurors will follow the instructions given to them. 481 U.S. at 206–07, 107 S.Ct. at 1707. Unlike the confession in *Bruton,* the redacted confession of the codefendant in *Richardson* did not directly implicate the defendant in the crime and did not even mention her existence. The Court held that the Confrontation Clause is not violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction where

the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. 481 U.S. at 211, 107 S.Ct. at 1709. In *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151 (1998), however, the Court held that simply redacting the defendant's name from the codefendant's confession is not sufficient where there remains a direct and obvious inference that the other person implicated by the confession is the defendant.

The Ninth Circuit has held that the admission of a codefendant's statement, which does not incriminate the defendant unless it is linked with other evidence introduced at trial, does not violate the defendant's Sixth Amendment rights. *United States v. Hoac,* 990 F.2d 1099, 1105 (9th Cir. 1993). In *United States v. Olano,* 62 F.3d 1180 (9th Cir. 1995), the defendants were jointly tried on charges of bank fraud. At trial, the court admitted prior statements made by codefendants who did not testify and gave a limiting instruction that the statements could only be considered as evidence against the defendants who made the statements. In holding that the admission of these statements did not violate the defendant's Sixth Amendment rights, the court stated: "None of the codefendants' statements incriminated Olano on their face. Unlike the full blown confession that was the subject of *Bruton,* the grand jury and deposition testimony of Hilling, Marler, and Gray that was read to the jury plainly did not have a sufficiently 'devastating' or 'powerful' inculpatory impact to be incriminating on its face." *Olano,* 62 F.3d at 1195. In *United States v. Angwin,* 271 F.3d 786, 796 (9th Cir. 2001) (overruled on other grounds by *United States v. Lopez,* 484 F.3d 1186 (9th Cir. 2007)), the court stated that "[u]nder *Bruton* and its progeny, the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when that statement facially, expressly, clearly and powerfully implicates that defendant." *See also United States v. Hernandez–Orellana,* 539 F.3d at 1001.

Defendant Burge has apparently obtained the statements that he and the codefendants made to law enforcement officers after their arrests. He has not provided the statements to the Court, however, so that it can determine whether they implicate the codefendants, and if so, whether they can be redacted to avoid such implication. Under Fed.R.Crim.P. 14(b), the court can order the government to produce the statements for *in camera* inspection before ruling on a motion to sever. The Government states, however, that it may not introduce the recorded

1 statements, but may, instead, have the law enforcement officer(s) testify about what a particular
2 defendant stated, without implicating the other defendants. At this point, Defendants have not
3 met their burden to show that severance is required pursuant to *Bruton*. The Court will deny the
4 motion for severance on this ground, without prejudice to Defendants renewing the motion if
5 Government decides to introduce the statements in a manner that violates their Sixth Amendment
6 confrontation rights.

**2. Severance Based on Antagonistic Defenses.**

8 A defendant is entitled to severance based upon mutually antagonistic defenses only if
9 "the core of the codefendant's defense is so irreconcilable with the core of his own defense that
10 the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant."
11 *United States v. Thockmorton,* 87 F.3d 1069, 1072 (9th Cir. 1996). Mere inconsistency in
12 defense positions is insufficient to find the codefendants' defenses antagonistic. *United States v.*
13 *Tootick,* 952 F.2d 1078, 1081 (9th Cir. 1991). Rather, "[m]utually exclusive defenses are said to
14 exist when acquittal of one codefendant would necessarily call for the conviction of the other."
15 *Id.* "The prototypical example is a trial in which each of two defendants claims innocence,
16 seeking to prove instead that the other committed the crime." *Id.* Furthermore, mutually
17 antagonistic defenses are not prejudicial per se. *Zafiro,* 506 U.S. 534 at 539, 113 S.Ct. 933, 122
18 L.Ed.2d 317. Even if prejudice is shown, the tailoring of the relief to be granted, if any, is in the
19 district court's sound discretion. *Id.*

20 In *United States v. Tootick,* the court reversed defendants' convictions where they
21 accused each other of having stabbed the victim. The court stated that the defendants' attorneys
22 acted as "unsanctioned prosecutors" during the trial. 952 F.2d at 1085. The court also cited the
23 trial judge's failure to control the defendant's counsel's conduct or instruct the jury at appropriate
24 times during the trial. *Id.* at 1082. In *United States v. Voigt,* 89 F.3d 1050, 1094–95 (7th Cir.
25 1996), however, the court stated that while mutually antagonistic defenses have been much
26 discussed in theory, only rarely have courts found that they exist in practice. "Far more
27 frequently, courts have concluded that the asserted defenses, while in conflict with one another,
28 are not so irreconcilable that the jury could not have been able to assess the guilt or innocence of

the defendants on an individual and independent basis." *Id.* (internal citations and quotations omitted). *Voigt* also noted that courts have consistently held that finger-pointing and blame-shifting among co-conspirators does not support a finding of mutually exclusive defenses. *Id.* at 1095 (citing *United States v. Provenzano,* 688 F.2d 194, 198 (3rd Cir.), *cert. denied,* 459 U.S. 1071 (1982) and *United States v. Smith,* 44 F.3d 1259, 1266–67 (4th Cir. 1995)). The court in *United States v. Smith*, 44 F.3d at 1266–67, stated that "because joint participants in a scheme often will point the finger at each other to deflect guilt from themselves or will attempt to lessen the importance of their role, a certain amount of conflict among defendants is inherent in most multi-defendant trials. In order to justify a severance, however, joined defendants must show that the conflict is of such magnitude that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."

Defendants merely incant that they have antagonistic defenses. They do not explain the substance of their defenses, or how the conflict in their defenses is of such a level as to require separate trials. Defendants have not met their burden to show that separate trials are required. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Sever Trial or Alternatively to Bar Reference to Statements Made by Any Co-Defendants (ECF No. 82) is **denied**.

**IT IS FURTHER ORDERED** that Defendants may renew their motion for severance pursuant to *Bruton* if the Government gives notice that it intends to introduce the Defendants' recorded post-arrest statements at trial in a manner that would violate their Sixth Amendment rights. The Government shall provide such notice thirty (30) days before trial so that Defendants have sufficient opportunity to file a motion for severance.

DATED this 9th day of August, 2018.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**