UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No.: 2: 18-cr-00144-JAD-GWF |
|---|---|
| Plaintiff, | **ORDER** |
| v. | **Re: Motion to Sever Trial (ECF No. 120)** |
| RANDELL BURGE, *et al.*, | |
| Defendants. | |

This matter is before the Court on Defendant Randell Burge's Motion to Sever Trial Based Upon New Evidence of Antagonistic Defenses (ECF No. 120), filed on December 13, 2018. The Government filed its Response (ECF No. 126) on January 14, 2019. The Court conducted a hearing in this matter on February 4, 2019.

**BACKGROUND**

Defendant Randell Burge is charged with other defendants in an eleven count indictment filed on May 8, 2018. All of the co-defendants are charged in count one with conspiracy to commit "Hobbs Act" robbery in violation of 18 U.S.C. § 1951 between June 5, 2017 and September 7, 2017. Mr. Burge is charged with participating in an armored car robbery with Defendant Trayvale Harrison on June 5, 2017; participating in an armored car robbery with Defendants Trayvale Harrison and Phillip Shiel on July 5, 2017; participating in an armored car robbery with Defendants Trayvale Harrison and Phillip Shiel on August 14, 2017; participating in an armored car robbery with Defendants Trayvale Harrison, Phillip Shiel, Shantae Williams, and Ianthe Rowland on August 25, 2017; and participating in the attempted robbery of an

armored car with Defendants Trayvale Harrison, Phillip Shiel and Ianthe Rowland on September 8, 2017.  *Indictment* (ECF No. 51).

The criminal complaint filed on September 18, 2017 alleges that following the attempted armored car robbery on September 8, 2017, Defendant Ianthe Rowland waived her right to remain silent and admitted that Defendants Burge, Shiel and Harrison were involved in the armored car robberies.  She admitted that she assisted the robbers by driving switch vehicles, providing a vehicle for use during a robbery, and dropping off the suspects prior to that day's planned robbery.  She also admitted to receiving funds from the robberies.  *Criminal Complaint* (ECF No. 1) at 16-17.

On October 24, 2018, Defendant Rowland's counsel filed a document in which he stated that Rowland "was battered, assaulted with a firearm, and held captive at gun point by one of the defendant's who she resided [sic].  Rowland's children were terrified that he could kill them and will testify to the abuse."  *Response* (ECF No. 111) at 2.  According to Defendant Burge's motion to sever, Ms. Rowland was in a relationship with him.  She will allegedly assert as a defense that Defendant Burge coerced her into participating in the crimes.  Defendant Burge therefore argues that his trial should be severed from that of Rowland because of their antagonistic defenses.

The Government states in its response that "[i]t is very common for co-defendants to testify against one another, either in hopes of receiving a favorable plea or to further his or her alleged defense.  In fact, based on Rowland's initial post-arrest statement, Burge should anticipate the likelihood that she would testify at trial whether it be as a witness for the government or on her own defense. On that note, the government does not intend to call Rowland as a witness against Burge at this time given the abundant evidence inculpating Burge in this case.  For instance, the government anticipates admitting the following evidence against Burge at trial: wiretap recordings; GPS trackers; video surveillance, and fingerprint evidence. This abundant evidence further supports denial of Burge's motion because there will be sufficient independent evidence against Burge to demonstrate his guilt regardless of whether Rowland testifies." *Government's Response* (ECF No. 126) at 6-7.

**DISCUSSION**

Rule 8(b) of the Federal Rules of Criminal Procedure permits the joinder of defendants who have allegedly participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses. Codefendants jointly charged are, prima facie, to be jointly tried. *United States v. Mariscal,* 939 F.2d 884, 885 (9th Cir. 1991). This rule "should be construed broadly in favor of initial joinder." *United States v. Ford,* 632 F.2d 1354, 1373 (9th Cir. 1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1399 (1981). Joinder of charges against multiple defendants is particularly appropriate when the charges involve substantially overlapping evidence. *United States v. Vasquez–Velasco,* 15 F.3d 833, 844 (9th Cir. 1994). There is a strong preference for joint trials because separate trials would "impair both the efficiency and the fairness of the criminal justice system" by requiring the United States to "bring separate proceedings, presenting the same evidence again and again [.]" *Richardson v. Marsh,* 481 U.S. 200, 210, 107 S.Ct. 1702 (1987). A joint trial is also particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials. *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).

Rule 14 provides relief from joinder if the defendant satisfies the "heavy burden" of showing that prejudice will result from joinder. *United States v. Sitton,* 968 F.2d 947, 961 (9th Cir. 1992). "Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Severance should only be granted if there is a serious risk that a joint trial would either compromise a specific constitutional right of one of the defendants or prevent the jury from compartmentalizing the evidence as it relates to individual defendants. *Id.*, 506 U.S. at 539, 113 S.Ct. at 938; *United States v. Escalante,* 637 F.2d 1197, 1201–02 (9th Cir. 1980). Even where the risk of prejudice seems high, such risk can often be cured by less drastic measures, such as limiting instructions. *Zafiro,* 506 U.S. at 539, 113 S.Ct. at 938 (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709 (1987)).

3

The Ninth Circuit has developed a four-part test to aid the district court's determination of whether severance should be granted. These factors include: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendants can show with some particularity, a risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Hernandez–Orellana,* 539 F.3d 994, 1001 (9th Cir. 2008) (citing *United States v. Sullivan,* 522 F.3d 967, 981–82 (9th Cir. 2008)). The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury. *Sullivan,* 522 F.3d at 981–82.

In *United States v. Tootick*, 952 F.2d 1078 (9th Cir. 1991), two defendants were charged with assault resulting in serious bodily injury to the victim. Each defendant denied that he committed the assault and cast the blame on the other. The district court denied the defendants' motion to sever. They were jointly tried and both were convicted. On appeal, the Ninth Circuit noted that it reviews a denial of severance for an abuse of discretion. The defendant must meet a heavy burden to show such abuse, and a trial judge's decision will seldom be disturbed. *Id.* at 1080. The court stated that mutually exclusive defenses exist when acquittal of one of the defendants would necessarily call for the conviction of the other. "'The prototypical example is a trial in which each of two defendants claims innocence seeking to prove instead that the other committed the crime.'" *Id.* at 1081 (quoting *United States v. Holcomb*, 797 F.2d 1320, 1324 (5th Cir. 1986)). When severance is requested based on mutually exclusive defenses, the court must consider the substantial possibility of prejudice. There is no *per se* rule requiring severance when mutually exclusive defenses are asserted. In analyzing whether severance should be granted, "[t]he touchstone of the court's analysis is the effect of joinder on the ability of the jury to render a fair and honest verdict. Prejudice will exist if the jury is unable to assess the guilt or innocence of each defendant on an individual and independent basis." *Id.* The ultimate question

is whether under all of the circumstances, the jurors are capable of following the court's instructions, and whether they can collate and appraise the evidence against each defendant based solely upon the defendant's own acts, statements, and conduct. *Id.* at 1082 (quoting *United States v. Brady,* 579 F.2d 1121, 1128 (9th Cir.1978), *cert. denied,* 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979)).

*Tootick* stated that joinder of defendants advocating mutually exclusive defenses can have a prejudicial effect in a number of ways. First, defendants who accuse each other bring the effect of a second prosecutor into the case. "The existence of this extra prosecutor is particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor." *Id.* at 1082. Cross-examination of the government's witnesses or the codefendant's witnesses also provide opportunities to impeach and undermine the codefendant's case. The court summarized the inflammatory opening statements by the defendants' attorneys that were directed against their respective codefendants, and noted that the attorney's assertions were not all supported by the evidence introduced at trial. It also summarized portions of the cross-examination of a government witness that pointed the blame at the codefendant, and cited the prosecutor's final argument which sought to exploit the defendants' attacks on each other. The court found that that district judge failed to cure the prejudicial effect of these incidents by giving appropriate jury instructions at key points during the trial. It therefore reversed defendants' convictions and ordered that they be tried separately on remand. *Id.* at 1083-85.

In *Zafiro v. United States*, four defendants were charged with illegal drugs that were found in an apartment in which they were present. They each moved for severance on the grounds that their respective defenses were antagonistic. The defendants' motions were denied and all four were convicted following a joint trial. The Court noted that Courts of Appeals have expressed the view that "mutually antagonistic" defenses may be so prejudicial in some circumstances as to mandate severance. "Notwithstanding such assertions, the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses. See, *e.g., United States v. Tootick*, 952 F.2d 1078 (CA9

5

1991); *United States v. Rucker*, 915 F.2d 1511, 1512-1513 (CA11 1990); *United States v. Romanello*, 726 F.2d 173 (CA5 1984). The low rate of reversal may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses." *Id.* 506 U.S. at 538, 113 S.Ct. at 937. The Court stated that Rule 14 does not require severance even if prejudice is shown. Rather, it leaves the tailoring of relief to be granted, if any, to the district court's sound discretion. *Id.*, 506 U.S. at 538-39, 113 S.Ct. at 937-38.

*Zafiro* listed the following types of prejudicial circumstances that may require severance:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See *Kotteakos v. United States,* 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. See, *e.g., Tifford v. Wainwright,* 588 F.2d 954 (CA5 1979) (*per curiam*). The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh,* less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. (citation omitted)

*Id.*, 506 U.S. at 539, 113 S.Ct. at 938.

The defendants in *Zafiro* did not articulate any specific instances of prejudice that occurred during their trial. The Court rejected the assertion that the mere existence of mutually antagonistic defenses required severance. *Id.*, 506 U.S. at 540-41, 113 S.Ct. at 938-39.

In *Collins v. Runnels*, 603 F.3d 1127 (9th Cir. 2010), three individuals, Collins, Anderson and James M., allegedly committed a robbery and murder. James M. agreed to testify against Collins and Anderson. Before trial, it became evident that the defendants intended to present mutually antagonistic defenses. Collins intended to assert an alibi defense that he was on the

telephone with his brother at the time the crime was committed. Anderson intended to assert that Collins coerced him and James M. into participating in the crime. The court denied Collins' motion for severance. At trial, several witnesses testified, including James M., who testified that he participated with Collins in the planning and execution of the robbery. Another witness also presented strong testimony incriminating Collins. *Id.* The codefendant, Anderson, also testified. He corroborated James M.'s testimony regarding Collins' involvement in the robbery and asserted his own duress defense. Collins presented his alibi defense. The jury found Collins guilty, but deadlocked on the identical charges against Anderson. Anderson was later convicted in a retrial. *Id.* at 1129, n. 1.

The California appellate court rejected Collins' argument that the joint trial was unduly prejudicial. It held that neither California nor federal law required trial severance under the circumstances and that Collins' due process rights were not violated. The court explained that Collins had been able to confront Anderson's conflicting evidence, which would have been admissible even if a separate trial had been granted. There was no indication that the joint trial induced the jury to convict Collins without proof beyond a reasonable doubt. The fact that the jury deadlocked against Anderson, demonstrated that it had separately considered the charges against each defendant. The court held that even if the refusal to order separate trails was erroneous, such error was harmless because of the overwhelming evidence against Collins. *Id.* at 1130. Collins filed a petition for writ of habeas corpus in federal court, arguing that the state court violated clearly established federal law in denying his motion for severance. In affirming denial of the habeas petition, the Ninth Circuit held that *Zafiro* was not binding on state courts. *Id.* at 1131-32. It also stated that even if *Zafiro* applied, it did not require severance on the ground that Anderson's defense made it more difficult for Collins to argue his innocence. The examples of serious prejudice set forth in *Zafiro* were not a concern in Collins' case. *Id.* 603 F.3d at 1132.

*Tootick*, *Zafiro*, and *Collins* involved the issue of whether the trial courts abused their discretion in denying the defendants' motions for severance. The court in *Tootick* concluded that the defendants were unfairly prejudiced and ordered separate trials on remand. In *Zafiro*, the

7

Supreme Court held that defendants failed to meet their burden to demonstrate serious prejudice that required severance of their trials. In *Collins*, the Ninth Circuit noted the California courts' conclusion that the defendant was not unfairly prejudiced by the joint trial. The Ninth Circuit's decision, however, was limited to determining whether the state courts violated clearly established federal law in denying defendant's motion for severance. Neither *Collins* or *Zafiro* stated that a grant of separate trials under the facts of those cases would have been improper. *Zafiro* made clear, however, that given the strong preference for joint trials, severance pursuant to Rule 14 should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." 506 U.S. at 539, 113 S.Ct. at 938.

The Government states in its opposition that Ms. Rowland could be called as a government witness at trial. That would occur if Ms. Rowland pleads guilty or the charges against her are dismissed. The Government states, however, that it does not presently intend to call Ms. Rowland as a witness given the abundant evidence against Defendant Burge. Although the Government does not describe that evidence in any detail in its opposition, the evidence against Mr. Burge and the other defendants is summarized in the statement of probable cause in the criminal complaint. *See Criminal Complaint* (ECF No. 1) at 6-17.

If Ms. Rowland testifies as a government witness, she will presumably testify about her and the Defendants' involvement in the robberies and the conspiracy. It is doubtful that she would testify about the assaults and threats that Mr. Burge allegedly made to coerce her into participating in the crimes, although those matters could be inquired into for impeachment purposes. The concern in a joint trial against Defendant Burge and Rowland, however, is that Ms. Rowland will emphasize that Defendant Burger coerced her into participating in the robberies by violence and the threat of violence.[1] This evidence will be presented by Defendant Rowland's counsel in an effort to obtain her acquittal, and in that effort, Ms. Rowland's counsel will assume the role of a second prosecutor against Defendant Burge. *See Tootick*, 952 F.2d at

---

[1] The Government will presumably attempt to prove that Ms. Rowland was a voluntary participant in the robbery scheme.

8

1082.  The effect of such testimony will not only be to prove that Defendant Burge committed some of the robberies, but that he also engaged in uncharged criminal violence or the threat of violence against Ms. Rowland.  While it is possible that the unfair prejudice to Defendant Burge can cured by appropriate instructions to the jury, and by preventing Defendant Rowland's counsel from overstepping proper boundaries, these circumstances reasonably justify the granting of separate trials under Rule 14.  Separate trials will reasonably ensure that if Defendant Burge is convicted, it will be based on the evidence introduced by the Government, which could include testimony by Ms. Rowland.  Accordingly,

**IT IS HEREBY ORDERED** Defendant Randell Burge's Motion to Sever Trial Based Upon New Evidence of Antagonistic Defenses (ECF No. 120) is **granted**.  Defendants Burge and Rowland shall be tried separately.  This order does not require that Defendant Burge be tried separately from any other codefendant.

DATED this 13th day of February, 2019.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**